UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NIHAD Y. YOUNAN,

                Plaintiff,          Case No. 11-cv-13881
                                      Honorable Avern Cohn
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [21, 26]**

Plaintiff Nihad Y. Younan ("Younan") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [21, 26], which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.      RECOMMENDATION**

For the reasons set forth below, the court finds that the Administrative Law Judge's ("ALJ") conclusion that none of Younan's impairments are "severe" and, thus, that she is not disabled under the Act, is supported by substantial evidence. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [26] be GRANTED, Younan's Motion for Summary Judgment [21] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision regarding Younan's application for SSI be AFFIRMED.

II.    **REPORT**

A.    **Procedural History**

On May 28, 2009, Younan filed an application for SSI, alleging disability beginning on January 1, 2008.  (Tr. 116-23).  Her claim for SSI was denied initially on August 26, 2009.  (Tr. 38-41).  Thereafter, Younan filed a timely request for an administrative hearing, which was held on July 9, 2010, before ALJ Theodore Grippo.  (Tr. 27-36).  Younan (represented by non-attorney Dannelly Smith) testified at the hearing, as did vocational expert ("VE") Erin O'Callaghan.  (Tr. 30-36).  On July 16, 2010, the ALJ found that Younan was not disabled.  (Tr. 15-23).  On June 30, 2011, the Appeals Council denied review.  (Tr. 1-4).  Younan filed for judicial review of the final decision on September 6, 2011 [1].

B.    **Background**

1.    *Disability Reports*

In a May 28, 2009 disability field office report, Younan reported that her alleged onset date was January 1, 2008.  (Tr. 132).  The claims examiner noted that Younan does not speak, read, or write English.  (Tr. 134).

In an undated disability report, Younan indicated that her ability to work is limited by diabetes, high blood pressure, depression, back and neck pain, high cholesterol, and "forgetful." (Tr. 137).  When describing how these conditions limit her ability to work, Younan stated:

> I am constantly tired.  I can't walk or stand for long periods of time.  It is painful to bend due to the back pain.  I am always sad.  I feel like life isn't worth anything.

(*Id.*).  Younan reported that these conditions caused her to become unable to work on January 1, 2008.  (*Id.*).  Younan also indicated that, prior to that date, she had never worked and had only

completed sixth grade.[1]  (Tr. 142).

Younan reported being seen by several medical providers regarding her conditions.  (Tr. 139-40).  She also reported taking calcium and Fosamax (to "strengthen bones"), Diovan and Norvasc (for high blood pressure), Glucophage (for diabetes), Hydrodiuril (a diuretic), Neurontin (for leg pain), Valium (to help her sleep), Zocor (for cholesterol), and Zoloft (for depression).  (Tr. 141).  None of these medicines produced negative side effects for her.  (*Id.*).  She further reported that she has had the following medical tests:  a blood test, an EKG, a stress test, and a urine test.  (Tr. 142).

In a function report dated June 25, 2009, Younan reported that she lives in an apartment with her family.  (Tr. 146).  She indicated that she wakes up "tired" and, because she is "sad and depressed," she sits on her couch and thinks of how happy she used to be.  (*Id.*).  She reported that she previously worked as a tailor and dressmaker.  (Tr. 147).  She has no problems with personal care, and she is able to cook simple meals for her family "almost every day."  (Tr. 147-48).  She does need reminders to take her medication.  (Tr. 148).  She is able to vacuum, wash dishes, and make tea every day, but her husband does the laundry.  (*Id.*).  She does not do yard work because she lives in an apartment.  (Tr. 149).  She can drive, but does not like to, and also does not like to go out alone.  (*Id.*).  She goes grocery shopping "once every two months."  (*Id.*).  She does not handle money because she does not "know anything about bills and bank accounts."  (*Id.*).  She used to enjoy sewing but can no longer concentrate on this, and she does not like watching television, reading, or any sports.  (Tr. 150).  She spends time with her

---

[1] Younan's mental health treatment records indicate that she told therapist Cindy Hindo that she had finished high school in Iraq and had "worked as a school teacher on and off prior to getting married."  (Tr. 234).  It appears, however, that Younan later attempted to clarify these statements, by indicating that she had "some high school education in Iraq," and previously worked "as a seamstress."  (Tr. 347).

husband, daughter, and in-laws, and she goes to church every week.  (*Id.*).  She does not have any problems getting along with family, friends, or neighbors.  (Tr. 151).

When asked to identify functions impacted by her condition, Younan said "not applicable," indicating that she was not restricted in lifting, walking, sitting, memory, concentrating, etc. (Tr. 151).  She indicated that she can walk for ten minutes before needing to stop and rest, and she has trouble finishing what she starts.  (*Id.*).  She does not handle stress well and has nightmares.  (Tr. 152).

In an undated disability appeals report, Younan reported that, beginning in approximately September of 2009, her conditions worsened and she began experiencing "more weakness."  (Tr. 158).  Specifically, she reported that she could no longer climb stairs unless she rested part way up.  (*Id.*).  She was continuing to treat with mental health professionals at the Arab-American and Chaldean Council.  (Tr. 159).  She was still taking calcium, Fosamax, Norvasc, Neurontin, Valium, and Zoloft, and had added Metformin (for diabetes).  (Tr. 160).  Other than the Metformin (which caused "weakness"), none of these medicines produced side effects.  (*Id.*).  She reported that there had been "no change really" in her daily activities since the time of her last report.  (Tr. 161).

### 2.   *Plaintiff's Testimony*

At the July 9, 2010 hearing before the ALJ, Younan testified, with the assistance of an interpreter, that she lives in an apartment with her husband (who has a "broken limb in his back") and fourteen-year-old daughter.  (Tr. 30, 34-35).  She finished the sixth grade in Iraq, but has had no other education.  (Tr. 30-31).  She cannot speak conversational English.  (Tr. 31).  Prior to getting married, she worked from home as a tailor, but she has not worked in the past fifteen years.  (*Id.*).

Younan further testified that she doesn't "feel healthy at all." (*Id.*). Her head, neck, and back ache all the time. (*Id.*). She testified that she gets headaches every day that last approximately two hours. (*Id.*). She has neck pain every morning and back pain "every minute." (Tr. 32). On a scale of 1 to 10, she rates her pain as 7 or 8, sometimes 10. (*Id.*). She can walk for about fifteen minutes before she starts to feel pain and needs to stop and rest. (Tr. 32-33). She cannot sit for more than thirty minutes before needing to change positions, and she cannot even lift a gallon of milk. (Tr. 33). Younan is able to wash dishes (but not "for long"). (*Id.*).[2]

### 3.   Medical Evidence

Younan's medical records consist of treatment records from her primary care physician (Dr. Nada Hana), mental health records from the Arab-American and Chaldean Council, and physical therapy records from Guardian Angel Outpatient Rehab. Each set of records will be discussed in turn.

### (a)   Dr. Nada Hana

Younan's medical records indicate that she treated with her primary care practitioner, Dr. Nada Hana, from August 2008 to February 2010. Generally speaking, Dr. Hana's treatment of Younan was routine and conservative. Over the course of Younan's treatment, Dr. Hana's clinical findings were essentially unremarkable, and his treatment notes indicate that her diabetes mellitus and hypertension were generally well-controlled. (*See, e.g.,* Tr. 188, 198, 211). Moreover, there is no indication in the record that Younan experienced significant physical symptoms or limitations on those occasions when her diabetes and hypertension were uncontrolled. (Tr. 185, 194, 202-03, 206, 209, 318). There were, however, occasions on which Dr. Hana noted that Younan was not taking medication as prescribed (Tr. 206) or that she had

---

[2] Independent vocational expert Erin O'Callaghan also testified at the hearing, saying only that Younan had no past relevant work. (Tr. 35).

not otherwise complied with his recommendations with respect to diet or exercise.  (Tr. 184, 202).

Although Younan alleges that her back pain, neck pain, and depression are severe impairments, she did not consistently report symptoms associated with these conditions to Dr. Hana.  It appears from the medical records that Younan saw Dr. Hana on fourteen occasions during the nineteen-month period between August 2008 and February 2010.  On eight of those fourteen visits, Younan said nothing about back pain, neck pain, or depression, and no indication of these conditions was noted in the related treatment records.  (Tr. 184-85, 196-211, 312-13).

It was not until February 2010 that Younan first mentioned having back/neck pain.[3]  (Tr. 282-87).  However, the objective medical imaging and testing ordered by Dr. Hana revealed generally mild conditions.  On February 4, 2010, Younan had x-rays of her cervical and lumbar spine, which showed only "mild degenerative changes at C6/C7" and "mild generalized osteoporosis and arthritis of the entire lumbar spine."  (Tr. 262).  On February 16, 2010, Younan had an MRI of her cervical spine, which revealed a mild broad-based bulging disc at C5-6.  (Tr. 266).  On February 19, 2010, Younan had an MRI of her lumbar spine, which showed mild lower thoracic and lumbar spondylosis, a mild disc bulge or protrusion at T12-L1, mild to moderate multilevel facet arthrosis, and mild bilateral neural foraminal narrowing at the L4-5 level.  (*Id.*).  The lumbar MRI showed no significant lumbar spinal canal stenosis.  (*Id.*).

Younan reported that she was feeling depressed on only four of her fourteen visits to Dr. Hana.  (Tr. 186-94, 317-18).  On March 30, 2009, Younan presented for "evaluation of PTSD

---

[3] It is unclear when this pain began.  At a February 11, 2010 visit to Dr. Hana, Younan reported that her pain had begun more than six months before.  (Tr. 282).  At her first physical therapy session on February 17, 2010, however, she said that her back and neck pain began on February 11, 2010.  (Tr. 257).  And, at her very next physical therapy appointment, she indicated that her pain began five months before.  (Tr. 256).  Thus, there are some inconsistencies in the record with respect to the alleged onset of this back/neck pain.

[post-traumatic stress disorder]," and reported that she had been diagnosed with anxiety, depression, and PTSD in Iraq. (Tr. 192). Dr. Hana noted that Younan's mood and affect were normal, but he increased her dosage of Zoloft, added Valium at night, and diagnosed her with "depressive disorder." (Tr. 192, 194). On April 15, 2009, Younan again complained of depression and was referred to Dr. Luay Hadad, a psychiatrist at the Arab-American and Chaldean Council, for further treatment. (Tr. 190-91). On May 29, 2009, Younan returned to Dr. Hana, again complaining of depression. Her Zoloft was increased again, and it was noted that she was scheduled to see Dr. Hadad on July 14, 2009. (Tr. 188). On September 21, 2009, Younan reported that she had been seeing Dr. Hadad and that the medications were "more effective now." (Tr. 317). It does not appear that Younan sought any further treatment from Dr. Hana for depression.

*(b)       Arab-American and Chaldean Council*

Younan sought mental health treatment from Dr. Luay Hadad (a psychiatrist) and Cindy Hindo (a limited licensed psychologist) at the Arab-American and Chaldean Council from May 11, 2009 through May 21, 2010. At the initial intake, on May 11, 2009, Younan "appeared depressed," with a flat affect. (Tr. 355). She presented with symptoms of depression, and indicated that she had difficulty sleeping and often had nightmares. (*Id.*). She indicated that she had a good relationship with her brothers, husband, and daughter, but she was easily irritated and angered, which was affecting the quality of her relationships. (Tr. 356). Younan was diagnosed with PTSD and major depressive disorder (recurrent, severe); her Global Assessment of Functioning (GAF) score was 50;[4] and she was advised to continue treating with medication and

---

[4]  GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

therapy.  (Tr. 360-61).

Younan was a no-show for her next therapy appointment.  (Tr. 353).  When she did return, on June 12, 2009, she spoke about her family's financial difficulties and indicated that she had been busy working on issues with respect to her green card, Medicaid, and food stamps.  (Tr. 352).  On July 14, 2009, she was in "fair and stable condition," but continued to express concerns about her financial difficulties and was "feeling depressed" about past traumatic events she had witnessed in Iraq.  (Tr. 349).

On July 14, 2009, Dr. Luay Hadad completed a psychiatric evaluation of Younan.  (Tr. 347-48).  Younan reported that she had been "struggling with a lot of anxiety and irritability for the last four years," but it had gotten worse.  (Tr. 347).  She denied any symptoms of PTSD.  (*Id.*).  She had a depressed mood and was tearful, anxious, and irritable.  (*Id.*).  She felt that she could not do things and have fun with her daughter because of their age difference.  (*Id.*).  Dr. Hadad diagnosed Younan with "major depressive disorder, single episode, severe" and assessed her GAF score as 60-65.  (Tr. 348).  Dr. Hadad prescribed Valium, Cymbalta, and Neurontin, noting, however, that Younan had already been prescribed Neurontin but was not compliant in taking it.  (*Id.*).  After this initial evaluation, Dr. Hadad's treatment notes indicate that no medication adjustments were necessary.  (Tr. 336, 338-39, 341, 343-44).

On August 18, 2009, Younan was again seen by Dr. Hadad, who indicated that she was "adjusting slowly," "less anxious," and "less irritable."  (Tr. 344).  Younan reported that she was "feeling a lot better" and had improvements in her frustration tolerance, impulse control, and depressed mood.  (*Id.*).  The same was true at Younan's visits on September 29, 2009 and December 11, 2009.  (*Id.*).

Younan was next seen on February 2, 2010, when Dr. Hadad noted that she was "feeling

8

a little bit better," but still was anxious and irritable at times. (Tr. 339). Her sleep pattern had improved, and she was socializing slowly and gradually. (*Id.*). The same was true at her next two visits (on March 2, 2010 and March 30, 2010). (Tr. 336, 338). At her April 9, 2010 visit, Younan indicated that she was "still depressed," expressed feelings of hopelessness and anxiety, and said that she was lacking motivation to complete household chores. (Tr. 332). She did, however, indicate that her psychiatric medications "were working." (*Id.*). On April 13, 2010, Younan appeared in "fair and stable" condition.

### (c)   Guardian Angel Outpatient Rehab

At Dr. Hana's suggestion, Younan attended four physical therapy sessions for her back and neck pain at Guardian Angel Outpatient Rehab between February 17, 2010 and May 3, 2010.[5] (Tr. 252-57). On April 12, 2010, after just two physical therapy visits (on February 17, 2010 and February 26, 2010), Younan reported that she was feeling better; her neck pain had decreased to a 3/10, and her back pain to a 2/10. (Tr. 255). Her back was progressing "better than expected," and her neck "as expected." (*Id.*). On May 3, 2010, Younan attended physical therapy for the last time, indicating that her pain was "better" and only "intermittent." (Tr. 254). She was discharged with a progressive home exercise program, and the physical therapist indicated that continued improvement was anticipated. (*Id.*).

### (d)   Consultative Reports

The record does not contain an assessment of Younan's residual functional capacity from either Dr. Hana or Dr. Hadad, nor does it contain opinion evidence on this issue from a state agency consulting physician or psychiatrist.

---

[5] In her brief, Younan asserts that she underwent twenty physical therapy sessions before she was discharged. (Doc. #21 at 5). From the medical evidence in the record, however, it does not appear this was the case.

The record does contain a "Case Analysis" performed by Sonia Dewberry, a state agency Single Decisionmaker.   This analysis, dated August 22, 2009, concluded that Younan's allegations of back and neck pain, diabetes, and depression were "non severe."  (Tr. 237).  The record also contains a "Psychiatric Review Technique" form completed by Dr. Kokila Sheth. (Tr. 238-50).   Dr. Sheth considered Younan's conditions under Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders), and concluded that Younan had "depressive disorder," but it was not severe.  (Tr. 241).  Dr. Sheth noted that the "culture shock" associated with moving to the United States was adding to Younan's distress.  (Tr. 250).  Dr. Sheth further concluded that Younan had only mild limitations in her activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation.  (Tr. 248).

### C.      Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . .  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D.    The ALJ's Findings**

Utilizing the five-step sequential analysis, the ALJ found that Younan has not been disabled under the Act since May 28, 2009, the application date.  At Step One, the ALJ found that Younan has not engaged in substantial gainful activity since May 28, 2009.  (Tr. 17).  At Step Two, the ALJ found that Younan has the medically determinable impairments of diabetes mellitus, hypertension, low back pain, and major depressive disorder, single episode.  (*Id.*).  However, the ALJ found that none of Younan's impairments, whether alone or in combination, were "severe," in that they did not significantly limit (or were not expected to significantly limit) her ability to perform basic work-related activities for twelve consecutive months.  (*Id.*).  As a result, the ALJ concluded that Younan has not been under a disability since May 28, 2009.  (Tr. 22).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).   In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health*

12

& *Human Servs.*, 884 F.2d 241, 245 (6ᵗʰ Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6ᵗʰ Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6ᵗʰ Cir. 1994) (internal citations omitted).

**F.     Analysis**

1.     *The ALJ's Conclusion that Younan's Mental and Physical Impairments – Alone or In Combination – are Not Severe is Supported by Substantial Evidence*

As set forth above, the ALJ found that Younan has four medically determinable impairments: diabetes mellitus, hypertension, low back pain, and "major depressive disorder, single episode."  (Tr. 17).  He then concluded that none of these impairments, alone or in combination, are severe within the meaning of the Act.  (*Id.*).  On appeal, Younan argues that this conclusion is not supported by substantial evidence.

At Step Two of the sequential evaluation process, the ALJ must consider whether a claimant has a severe impairment.  *See* 20 C.F.R. §416.920(a)(4).  "To surmount the step two hurdle, the applicant bears the ultimate burden of establishing that the administrative record contains objective medical evidence suggesting that the applicant was 'disabled,' as defined by the Act . . . ."  *Despins v. Comm'r of Soc. Sec.*, 257 Fed. App'x 923, 929 (6ᵗʰ Cir. 2007).  The applicable regulations generally define a "severe" impairment as an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic

work activities . . . ." 20 C.F.R. §416.920(c). Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §416.921(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *See id.*

As Younan correctly points out, the Sixth Circuit has "characterized step two of the disability determination process as a '*de minimis* hurdle.'" *Despins*, 257 Fed. App'x at 929. "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time." *Despins*, 257 Fed. App'x at 930. In considering whether a claimant has a severe impairment, an ALJ need not accept unsupported medical opinions or a claimant's subjective complaints. *See Weckbacher v. Comm'r of Soc. Sec.*, 2012 WL 2809697, at *9 (S.D. Ohio July 10, 2012).

### a.    *Younan's Mental Impairments*

With respect to Younan's mental impairments, there is substantial evidence in the record supporting the ALJ's conclusion that her depressive disorder does not rise to the level of a severe impairment under the Act.

Younan began treating with Dr. Hana in August 2008, and from that time until March 2009, Dr. Hana consistently noted that Younan's mood and affect were normal. (Tr. 198, 201,

14

209, 212).  It was not until March 2009 that Younan first complained to him of mental health issues.  At that time, she indicated that she had been diagnosed with anxiety, depression, and PTSD back in Iraq (several years earlier).  (Tr. 192).  On examination, Dr. Hana noted that Younan was oriented, and her mood and affect were normal.  (Tr. 194).  Nonetheless, Dr. Hana increased her dosage of Zoloft, added Valium at night, and diagnosed her with "depressive disorder."  (Tr. 194).  At Younan's next visit, Dr. Hana noted that she seemed "more depressed," and he referred her to Dr. Hadad's office for further treatment.  (Tr. 190-91).

When Younan first saw Cindy Hindo (a limited licensed psychologist), on May 11, 2009, she "appeared depressed" and had a flat affect.  (Tr. 355).  Ms. Hindo diagnosed Younan with PTSD and major depressive disorder (recurrent, severe), gave her a GAF score of 50, and advised her to continue with medication and therapy.  (Tr. 360-61).  Two months later, when Younan saw Dr. Hadad for her initial psychiatric evaluation, Younan had a depressed mood and was tearful, anxious, and irritable, but denied any symptoms of PTSD.  (Tr. 347).  She expressed sadness that she could not do things and have fun with her daughter because of their age difference.  (*Id.*).  Dr. Hadad diagnosed Younan with "major depressive disorder, single episode, severe" and assessed her GAF score at 60-65.  (Tr. 348).  Dr. Hadad prescribed Valium, Cymbalta, and Neurontin at this initial session, and her treatment notes indicate that no medication adjustments were subsequently necessary.[6]  (Tr. 336-348).

The medical evidence shows that Younan's mental condition improved over the course of the next few months.  Ms. Hindo's counseling notes from June, July, and August 2009 indicated that Younan was in "fair and stable condition," was oriented, and was having no suicidal or

_____

[6] Indeed, the record evidence establishes that the medications prescribed to Younan reduced her psychiatric symptoms.  For example, Dr. Hana noted in September 2009 that Younan's medications were "more effective" under Dr. Hadad's management.  (Tr. 317).  And, in April 2010, Younan told Ms. Hindo that she felt a bit better with the medication.  (Tr. 332).

homicidal ideations.   (Tr. 345, 349, 352).   Dr. Hadad's treatment notes from August and September 2009 noted that Younan was "adjusting slowly," "less anxious," and "less irritable," and was "feeling a lot better" and seeing improvements in her frustration tolerance, impulse control, and depressed mood.  (Tr. 343-44).

In August 2009, Dr. Sheth, the state agency psychiatrist, opined that Younan had depressive disorder, but that it was not severe.  (Tr. 241).  She concluded that Younan had only mild limitations in her activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation.  (Tr. 248).  Younan's argument that the ALJ erred in relying on Dr. Sheth's opinion is not persuasive because, as the ALJ correctly pointed out, this opinion is consistent with other evidence in the record.  *See* 20 C.F.R.  §416.929(c)(1),  (c)(3) (relevance of statements from non-treating sources about how symptoms affect a claimant).

In both December 2009 and February 2010, Younan told Dr. Hadad that she was "feeling a little bit better," and Dr. Hadad noted that she was "able to take care of the kids and family." (Tr. 339, 341).   The same was true on March 2, 2010, when Younan indicated that she "participates in her activities with family…."  (Tr. 338).  In March and April 2010, Ms. Hindo reported that, while Younan was still having difficulties adjusting to life in the United States, she was in "fair and stable condition," oriented, and had no suicidal or homicidal ideations.  (Tr. 329, 334).

In summary, the evidence establishes that Younan's mental health symptoms peaked in the spring of 2009 – when Dr. Hana referred her to Dr. Hadad – but quickly and steadily stabilized and improved over the following months.  This history, combined with the opinion of Dr. Sheth, provides substantial evidence for the ALJ's conclusion that Younan did not have a

severe mental impairment that lasted (or was expected to last) for a continuous period of at least twelve months.  (Tr. 17).  *See* 20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 416.909.

<em>b.      Younan's Physical Impairments</em>

With respect to Younan's diabetes mellitus and hypertension, the ALJ's conclusions that these conditions are "generally well controlled" with "routine and conservative" treatment are supported by substantial evidence.  (Tr. 20).  On April 18, 2009, just eight months after Younan had begun treating with Dr. Hana, he noted that her diabetes and lipids were improving.  (Tr. 260).  By the end of May 2009, Dr. Hana characterized Younan's blood pressure as "well controlled."  (Tr. 187).  Moreover, as the ALJ correctly noted, the medical evidence establishes that even "at those times when her diabetes and hypertension were uncontrolled," Younan "did not experience significant physical symptoms or limitations."  (Tr. 20).  Dr. Hana's treatment records consistently indicate that Younan's extremities were normal, her peripheral pulses were intact, and she had normal sensation.  (Tr. 188, 194, 198, 203, 206, 209, 212).

As for Younan's complaints of back and neck pain, the ALJ correctly noted that Younan "did not consistently report symptoms" to Dr. Hana.  (Tr. 20).  Prior to February 2010, Younan made no mention of any back or neck pain to Dr. Hana, and he consistently recorded normal clinical findings related to her musculoskeletal and neurologic systems and extremities.  (Tr. 188, 194, 198, 203, 209, 212).  Younan did attend physical therapy for her back and neck pain between February and May of 2010, but she was discharged after only four appointments.  At that time, she reported that her symptoms were better and her pain had decreased and was only intermittent.  (Tr. 254-55).  The record does not reflect any further complaints of or treatment for musculoskeletal pain.

Finally, the ALJ specifically referenced the fact that Younan had indicated in her June

2009 Function Report that "she did not have limitations regarding lifting, squatting, bending…" (Tr. 19, 151).[7]  Citing to the same report, he also referenced that she could perform numerous physical activities, including "perform all personal care tasks independently; prepare simple meals nearly every day; perform household chores such as vacuuming and washing dishes…" (Tr. 19, 147-48).

For all of the above reasons, the ALJ's conclusion that Younan's physical impairments, alone or in combination, are not severe is supported by substantial evidence.

### 2.    *Younan's Other Arguments are Without Merit*

On appeal, Younan argues that the ALJ erred in several respects in concluding that her impairments are not severe.  First, Younan argues that with respect to her mental impairments, "the ALJ focused on the State agency checkbox form alone, stating that there were no other opinions of greater limitations of record."  (Doc. #21 at 9).  As an initial matter, this statement is simply incorrect: the ALJ did not focus on Dr. Sheth's assessment alone but, rather, considered this opinion in light of all of the other record evidence, including that: Younan's psychiatric symptoms improved over the course of her treatment; the medications were helping her condition; her daily activities were inconsistent with her alleged level of disability and limitations; and numerous factual inconsistencies in the record called into question the legitimacy of her various assertions regarding her capabilities.  (Tr. 21-22).[8]  The ALJ's reliance

---

[7] The ALJ contrasted this report with Younan's later testimony that she could not even lift a gallon of milk, noting that "the record does not indicate a significant decline in [her] alleged conditions" which would explain such a decline in her physical capabilities.  (Tr. 19).

[8] Younan points to her GAF scores (of 50 in May 2009 and 60-65 in July 2009) as evidence that her mental impairment is severe.  (Doc. #21 at 10).  As an initial matter, however, GAF scores do not conclusively establish the existence of a severe impairment.  *See White v. Comm'r of Soc. Sec.*, 2011 WL 5104622, at *3 (E.D. Mich. Oct. 27, 2011) (there is no statutory, regulatory, or other authority requiring the ALJ to "put stock" in a GAF score).  In fact, the Sixth Circuit has found that GAF scores, while potentially useful tools, do not have any "direct correlation to the

on Dr. Sheth's opinion, in conjunction with all of the other evidence in the record, was not erroneous. *See* 20 C.F.R. §416.929(c)(4).

Younan also argues that, in direct contradiction to Dr. Sheth's opinion that her mental impairments were not severe, her "treating doctors made several indications in the treatment notes of mental impairments that are severe and would have more than minimal effect on her ability to perform work." (Doc. #21 at 9). Again, however, the record evidence does not support this assertion. There is no indication in the record that Dr. Hana, Dr. Hadad, or Ms. Hindo ever placed any restriction on Younan's ability to work. As the Sixth Circuit has previously noted, "[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, this court has regularly found substantial evidence to support a finding of no severe impairment.'" *Despins*, 257 Fed. App'x at 930 (quoting *Long v. Apfel*, 1 Fed. App'x 326, 331 (6th Cir. 2001)). Thus, where Younan's own treating physicians have given no indication that her impairments preclude work, this argument fails.

Second, Younan argues that the ALJ erred in finding that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible because they were inconsistent with her activities of daily living. (Doc. #21 at 12-14). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and

---

severity requirements of the mental disorders listings." *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart*, 2005 WL 1317040, at *6, n. 5 (11th Cir. 2005) and 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000). Moreover, the ALJ explained that he gave more weight to the higher GAF score (assigned by Dr. Hadad) because it was well-supported and consistent with the record, and because Younan's condition had improved since the time of her initial assessment. (Tr. 21). The ALJ's conclusion in this regard is supported by substantial evidence and is a correct application of the law regarding GAF scores. *Id.*

should not be discarded lightly.'"  *Kirk v. Secretary of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Secretary of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)).   Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible.  *Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.

Here, the ALJ considered Younan's allegations of pain in light of other evidence in the record, including her activities of daily living (she was able to perform personal care independently, could care for her husband and daughter, vacuumed, washed dishes, and attended church services regularly); her noncompliance with treatment (failing to adhere to dietary restrictions prescribed for diabetes and hyptertension) and prescribed medication (failing to take Neurontin and Norvasc); the fact that her treatment was essentially "routine and conservative in nature"; the fact that her mental conditions improved with treatment, as discussed above; and the inconsistencies in the record regarding Younan's education, work history, and the severity of her pain.  (Tr. 20, 32, 142, 184, 202, 204, 206, 234-35, 255).<sup>9</sup>  Although Younan argues that the ALJ

---

<sup>9</sup> Younan argues that the ALJ erred in considering these inconsistencies when evaluating her

failed to consider "medication side-effects" when evaluating her credibility, the evidence establishes that she consistently reported that none of her prescribed medications caused side-effects (with the exception of Metformin, which caused only some "weakness"). (Tr. 141, 160, 186-87). Thus, the ALJ's assessment of Younan's credibility, which thoroughly considered other evidence in the case record, is supported by substantial evidence.

In summary, although Younan suffers from both mental and physical impairments, the mere existence of those impairments does not establish that she was significantly limited from performing basic work activities for a continuous period of time. The ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the court RECOMMENDS that Younan's Motion for Summary Judgment [21] be DENIED, the Commissioner's Motion [26] be GRANTED, and this case be AFFIRMED.

Dated: August 14, 2012                           s/David R. Grand_____
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

---

credibility, arguing that there could have been a "problem in translation" and that the ALJ had a duty to question Younan about any purported inconsistencies, particularly where she was not represented at the hearing by an attorney. (Doc. #21 at 10, 13). However, SSR 96-7p, which Younan cites in support of this argument, provides only that the ALJ *may* need to question the claimant about alleged inconsistencies. Here, where the ALJ explicitly considered "other information in the case record" (which, as discussed above was "substantial evidence" supporting his decision) as required by that same policy ruling, he did not commit error. Moreover, this is not a case where the claimant, proceeding without counsel, was rendered "incapable of presenting an effective case." *Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x 456, 459 (6th Cir. 2008). To the contrary, Younan engaged Dannelly Smith, who works for the Disability Benefits Corporation – an entity which apparently provides assistance to individual social security claimants. (Tr. 52-53). Smith elicited four pages of testimony from Younan at the hearing before the ALJ, including about her work history, her physical and mental impairments, and her activities of daily living. (Tr. 30-34). Smith also submitted a detailed pre-hearing brief and helped Younan with the appeals process. (Tr. 9, 180, 182)

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 14, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager